UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE XIN CHEN,
*Petitioner*.

No. 3:17-cv-00615 (SRU)

**RULING DENYING PETITION FOR WRIT OF MANDAMUS**

Xin Chen petitioned for a writ of mandamus, asking that I order United States Bankruptcy Judge James J. Tancredi to recuse himself from presiding over a bankruptcy court adversary proceeding to which Chen is a party. *See* Doc. No. 1. She also sought a stay of the bankruptcy proceedings. *See id.* At a hearing held on April 17, 2017, I orally denied Chen's petition. *See* Doc. No. 12. In this ruling, I set forth in detail the reasons for my decision.

**I.    Standard of Review**

District courts are empowered to order a bankruptcy judge's recusal via a writ of mandamus, but "such a remedy is rarely granted." *In re Ad Hoc Comm. of Tort Victims*, 327 B.R. 138, 141 (S.D.N.Y. 2005). When the bankruptcy judge already has ruled on a motion to recuse, district courts apply "the standard of review applied by the Second Circuit to mandamus actions seeking recusal of a district judge." *Id.* (citing, e.g., *In re Savage & Associates, P.C.*, 2005 WL 578919, at *1 (S.D.N.Y. Mar. 9, 2005); *Tese-Milner v. Holland*, 1997 WL 1048898, at *3 (E.D.N.Y. Nov. 26, 1997)). Under that "exacting standard," *In re IBM*, 45 F.3d 641, 643 (2d Cir. 1995) (Newman, J.), "the exceptional remedy of mandamus only will be invoked where the petitioner has demonstrated that its right to such relief is 'clear and indisputable.'" *In re Basciano*, 542 F.3d 950, 955–56 (2d Cir. 2008) (quoting *In re Drexel Burnham Lambert*, 861 F.2d 1307, 1312 (2d Cir. 1988)).

In reviewing a bankruptcy judge's denial of a recusal motion for purposes of evaluating a mandamus petition, I first consider "the manner in which the [bankruptcy] judge decided not to recuse himself, employing an 'abuse of discretion' standard of review." *See id.* at 957. Second, I determine whether there have been "actions by the judge which might be viewed by 'an objective, disinterested observer' as evidencing bias." *Id.* The fundamental question is, "[w]ould a reasonable person, knowing all the facts, conclude that the [] judge's impartiality could reasonably be questioned?" *Diamondstone v. Macaluso*, 148 F.3d 113, 120–21 (2d Cir. 1998).

## II. Background

Jie Xiao—Chen's former husband—and his company, LXEng, LLC ("LXEng"), both filed for Chapter 7 bankruptcy relief in this district in July 2013. *In re LXEng*, No. 13-bk-51144 (Bankr. D. Conn. July 23, 2013); *In re Xiao*, No. 13-bk-51186 (Bankr. D. Conn. July 30, 2013). At the time of the filings, Xiao and LXEng were defendants in a suit brought by Dow Corning in the United States District Court for the Eastern District of Michigan. *See Dow Corning Corp. v. Xiao*, No. 11-cv-10008 (E.D. Mich.). In early July 2013, a few weeks before filing for bankruptcy, Xiao transferred approximately $1.6 million to Chen as part of a divorce settlement. *See* Pet. Writ Mandamus, Doc. No. 1, *In re Chen*, No. 17-cv-00615 (D. Conn. Apr. 13, 2017).

The Chapter 7 Trustee of the LXEng estate, Richard Coan, and the Chapter 7 Trustee of the Xiao estate, Ronald Chorches (collectively, "the Trustees"), separately sued Chen, alleging that the divorce settlement was a fraudulent transfer in violation of 11 U.S.C. § 548. *See Coan v. Chen*, No. 15-ap-05027 (Bankr. D. Conn.); *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn.). Both cases are currently pending in this district before Judge Tancredi. Trial in *Coan v. Chen* is scheduled to begin April 18, 2017, *see* Doc. No. 87, *Coan v. Chen*, No. 15-ap-05027 (Bankr. D. Conn.), and trial in *Chorches v. Chen*—which has been consolidated for trial with

another adversary proceeding, *Dow Corning Corp. v. Xiao*, No. 14-ap-05054 (Bankr. D. Conn.)—is expected to occur sometime in May 2017.

At the time that Chorches filed suit against Chen, he also filed an Application for Prejudgment Remedy ("PJR Application") and a Motion for Prejudgment Disclosure of Assets ("Disclosure Motion"). United States Bankruptcy Judge Alan H. W. Shiff—from whom the case subsequently was transferred to Judge Tancredi—issued an Order for Hearing and Notice on the PJR Application and Disclosure Motion on April 10, 2014. Docs. Nos. 4 & 5, *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn.). Judge Shiff certified notice of the hearing on the PJR Application to Chen by first class mail on April 12, 2014. Doc. No. 10, *id.* On April 21, 2014, Chen transferred $50,000 to a Bank of China account in her mother's name, and on May 5, 2014, she transferred an additional $250,000 to a Bank of China account in her mother's name. *See* Ex. A to Obj. Pet. Writ Mandamus, Doc. No. 9, *In re Chen*, No. 17-cv-00615 (D. Conn.).

On May 5, 2014, Judge Shiff granted the PJR Application and the Disclosure Motion, Docs. Nos. 13 & 14, *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn.), and the court mailed notice of the orders to Chen on May 7, 2014. *See* Docs. Nos. 15 & 16, *id.* On May 6, 2014, Chen transferred $50,000 to a Bank of China account in her father's name, and on May 12, 2014, she transferred $1,000,000 to accounts in her parents' names at the Bank of China. *See* Ex. A to Obj. Pet. Writ Mandamus, Doc. No. 9, *In re Chen*, No. 17-cv-00615 (D. Conn.). Chen subsequently testified under oath at a deposition that she placed the $1.6 million received as part of the divorce settlement into four financial institutions in the United States. *See id.*

On June 10, 2014—after counsel had appeared for Chen—Judge Shiff entered a Stipulated Order on the PJR Application. Doc. No. 30, *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn.). Two years later, Chorches filed a Motion to Modify Stipulated Order and to

Compel Defendant to Produce Proof of Compliance, in which he asked the bankruptcy court to require Chen to produce evidence of her compliance with the Stipulated Order, and to allow Chorches to attach $1,180,970 from Chen's assets (the sum he had previously sought in the PJR Application). Doc. No. 91, *id.* Judge Tancredi (now presiding over the case) held a hearing on the motion on October 20, 2016, Doc. No. 95, *id.*, after which he entered an Order Modifying Stipulated Order that authorized Chorches to "attach sufficient property and/or assets of [Chen] to secure the sum of $1,180,970." Doc. No. 97, *id.*

On February 21, 2017, Chorches first learned of Chen's transfer of $1.35 million to her parents in China. Obj. Pet. Writ Mandamus, Doc. No. 9, *In re Chen*, No. 17-cv-00615 (D. Conn.). On May 2, 2017, Chorches filed a Motion for Injunctive Relief in which he sought an injunction to compel Chen to bring the $1.35 million within the territorial jurisdiction of the bankruptcy court. Doc. No. 119, *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn.). Chen filed an objection on March 15, 2017, in which she claimed to have transferred the funds to avoid a different creditor—Xiao's original bankruptcy attorney, Carlos Cuevas—without any awareness of the adversary proceeding against her.[1] Doc. No. 129, *id.* The bankruptcy court held an evidentiary hearing on the Motion for Injunctive Relief on March 20, 2017, which was then continued until March 28, 2017.[2]

---

[1] Cuevas sued Chen and her ex-husband Xiao in Bronx County Supreme Court in December 2013 for non-payment of legal fees, and obtained a default judgment against her—"improperly," according to Chen—in the amount of $239,454.30 on January 10, 2014. *See* Pet. Writ Mandamus, Doc. No. 1, at 6–7, *In re Chen*, No. 17-cv-00615 (D. Conn. Apr. 13, 2017). That judgment was subsequently vacated and the case transferred to Westchester County Supreme Court, where it has been stayed pending the resolution of the actions in Connecticut. *Id.* at 8.

[2] Before continuing the March 20, 2017 hearing for one week, Judge Tancredi asked Chen's attorney to proffer what she intended to testify. Chen's counsel now argues that violated her due process rights. But Chen's attorney had asked that the hearing be adjourned early so that Chen

During the hearing on March 20, 2017, Judge Tancredi entered a Preliminary Order Restraining International Travel. *See* Doc. No. 142, *id.* ("Travel Order"). In the order, Judge Tancredi noted that Chorches had "previously established probable cause for a prejudgment remedy upon his Complaint," and that he had "also shown that there is good and compelling cause to restraining the Defendant's travel." *Id.* at 1. Judge Tancredi reasoned that "substantial funds that are the subject matter of this action, and [that] may be recoverable by the Trustee, have already been dispatched by [Chen] during the pendency of this action to China, where [Chen] has roots, family and where her former husband . . . conducts business and frequents." *Id.* Thus, pursuant to 11 U.S.C. § 105(a),[3] Judge Tancredi directed Chen to "immediately surrender and deliver any and all passports or travel papers to her legal counsel . . . to be held in escrow by his firm." *Id.* at 2. Judge Tancredi scheduled a "further hearing" on the Travel Order for March 28, 2017, "to seek its vacation, modification or other relief." *Id.*

On March 24, 2017, Chen filed a motion to recuse Judge Trancredi from presiding over *Chorches v. Chen*, Doc. No. 148, *id.*; a motion to recuse was not filed in the other adversary proceeding to which she was a party, *Coan v. Chen*, No. 15-ap-05027 (Bankr. D. Conn.). In her motion, Chen stated that recusal was required due to Judge Tancredi's "bias and/or prejudice concerning [her]," as evidenced by his decision to "enjoin [her] from international travel . . . without due process . . . and without hearing any testimony from her during the hearing." Mot. Recusal, Doc. No. 148, at 1, *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn. Mar. 24, 2017). She argued that "there has never been any evidence that [she] is a flight risk" (citing for

---

could return to New Jersey. Judge Tancredi did not evidence bias by asking that a party-witness's testimony be summarized on the record under those circumstances.

[3] 11 U.S.C. § 105(a) empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," as well as to "enforce or implement . . . earlier orders, and to prevent abuses of process."

5

support that "[s]he owns a home in New Jersey" and that "[h]er children go to school in New Jersey"), and that "[t]here was not a shred of evidence presented during the hearing that would warrant restraining [her] from international travel, especially given the fact that her mother is sick with cancer in China." *Id.* at 1–2. "[G]iven the basis for the [c]ourt's restraint on [her] travel," Chen argued, "[i]t is apparent that . . . the [c]ourt already has made up its mind on the ultimate issue in this case." *Id.* at 4. Therefore, she asked that Judge Tancredi recuse himself.

Judge Tancredi denied the recusal motion from the bench on March 28, 2017, and issued a ruling to the same effect on April 5, 2017. Ruling & Order, Doc. No. 176, *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn.). In the ruling, Judge Tancredi stated he "believe[d] that [Chen] misconceive[d] the nature, scope, and purpose of th[e] [Travel] Order," which was "a preliminary order under 11 U.S.C. § 105 and the Federal Rules of Civil Procedure," and which "expressly provide[d] for the immediate right to be heard and to seek modification or vacation of the order." *Id.* at 6–7. He observed that "a failure to issue the Travel Order . . . would likely have resulted in irreparable harm to the proceedings and Chapter 7 estate and left the estate without an adequate remedy." *Id.* at 7. Furthermore, "[a]s the Travel Order provided, [Chen] was subsequently allowed to present her evidence, rebuttal[] argument and to seek modification of the restrictions imposed." *Id.* Therefore, Judge Tancredi held, the Travel Order "neither demonstrate[d] a 'deep-seated favoritism or antagonism,' nor d[id] [it] represent the 'rare circumstance' where any decision of th[e] [c]ourt can be a basis for recusal." *Id.* at 8.

On March 31, 2017, Judge Tancredi issued an order that vacated the travel restrictions and authorized the return of Chen's passport. Doc. No. 167, *id.* Based on Chen's testimony at the hearing concerning "her family, the educational needs of her children, her local employment, her parents' residence in China and her alleged good faith and intentions in her divorce and in

6

connection with this litigation," as well as "her parents' medical conditions, treatment and care," Judge Tancredi concluded that a "reweighing of the equities, the 'flight risks' and the purposes of the Travel Order require[d] that it be vacated." *Id.* at 1–2. He permitted Chorches, "upon application," to "seek[] further or comparable relief 'for cause shown' in future proceedings," *id.* at 2, and also ordered Chen to file with the bankruptcy court within 10 days "a written accounting, sworn to under oath, of the current location and remaining amounts of those funds wired to her parents in China in April and May of 2014." *Id.*

On April 13, 2017, Chorches moved to hold Chen in civil contempt for failing to file an accounting of the funds transferred to her parents in China. Doc. No. 185, *id.* He requested that the bankruptcy court immediately grant his Amended Motion for Preliminary Injunction, reinstate the Travel Order, and enter a default judgment against Chen. *Id.* at 3. That same day, Chen petitioned this court for a writ of mandamus directing Judge Tancredi to recuse himself. Pet. Writ Mandamus, Doc. No. 1, *In re Chen*, No. 17-cv-00615 (D. Conn. Apr. 13, 2017). I held a hearing with attorneys for Chen and the Trustees on April 17, 2017. Doc. No. 12.

**III. Discussion**

Chen seeks Judge Tancredi's recusal under 28 U.S.C. § 455(a) & (b)(1), which have been made applicable to bankruptcy judges under Federal Rule of Bankruptcy Procedure 5004. In relevant part, section 455 provides:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

7

28 U.S.C. § 455. Subsection (b)(1) "entirely duplicate[s] the grounds of recusal set forth in [28 U.S.C.] § 144 ('bias or prejudice'), but (1) ma[kes] them applicable to *all* justices, judges, and magistrates (and not just district judges), and (2) place[s] the obligation to identify the existence of those grounds upon the judge himself, rather than requiring recusal only in response to a party affidavit." *Liteky v. United States*, 510 U.S. 540, 547 (1994). Subsection (a), meanwhile, is a "'catchall' recusal provision, covering both 'interest or relationship' and 'bias or prejudice' grounds, . . . but requiring them *all* to be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *Id.*

"The very purpose of § 455[] is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). At the same time, "recusal is not ordinarily or routinely required." *In re Basciano*, 542 F.3d at 956. To the contrary, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," because "only in the rarest circumstances [can they] evidence the degree of favoritism or antagonism required." *Liteky*, 510 U.S. at 555. "Almost invariably, they are proper grounds for appeal, not for recusal." *Id.* A ruling may be legally erroneous; it may even be an abuse of discretion; but, without more, that does not constitute bias. "Mandamus is not used simply to correct error." *In re FCC*, 217 F.3d 125, 133 (2d Cir. 2000).

In addition, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Hence, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," unless they

"reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* Mere "expressions of impatience, dissatisfaction, annoyance, and even anger" by a judge do "[*n*]ot establish[] bias or partiality." *Id.* at 555–56.

"There is an obligation on the part of a judge to decline to recuse himself for a relatively trivial reason." *In re Martin-Trigona*, 573 F. Supp. 1237, 1242–43 (D. Conn. 1983) (Cabranes, J.) (internal quotation marks omitted), *aff'd*, 760 F.2d 1334 (2d Cir. 1985); *see also United States v. Cooley*, 1 F.3d 985, 994 (10th Cir. 1993) ("There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."). Were it otherwise, recusal motions would become a tool for "judge-shopping" and "impeding the administration of justice." *In re Martin-Trigona*, 573 F. Supp. at 1243. Section 455 "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *Cooley*, 1 F.3d at 993. As Congress opined when enacting section 455, "[l]itigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice." H. Rep. No. 1453, 93d Cong., 2d Sess. 1 (1974), *reprinted in* 1974 U.S. Code Cong. & Admin. News 6351, 6355.

In her petition for writ of mandamus, Chen argues that Judge Tancredi must recuse himself or Chen "will not receive a fair trial." Pet. Writ Mandamus, Doc. No. 1, at 20. She contends that "a fair judgment is impossible" because Judge Tancredi showed himself to have "already made [his] determination . . . [by] impos[ing] injunctive relief . . . before [Chen] had the opportunity to be heard." *Id.* at 21. In Chen's view, Judge Tancredi restricted her travel "based upon [her] [national] origin of China, and the fact that her ex-husband does business and frequents there." *Id.* (internal quotation marks omitted). "The ultimate issue in . . . [the] [p]roceeding is whether the divorce was a 'sham,'" and, Chen argues, Judge Tancredi "clearly

9

impl[ied] that [Chen] still maintains a close relationship with her ex-husband and [] insinuated [] that she may return [to China] because he is there." *Id.* at 22. Thus, Chen asserts, "a reasonable observer would question the [j]udge's impartiality, and Judge Tancredi must be recused because he "already has made up [his] mind on the ultimate issue in th[e] case." *Id.* at 22–23.

The Trustees reply that Chen has not shown any grounds for recusal. "[T]he Travel Order was a reasonable and temporary precaution," they argue, and "has since been vacated." Obj. Pet. Writ Mandamus, Doc. No. 9, at 17–18. Because the Travel Order was vacated, the Trustees state that "it is inconceivable . . . that Judge Tancredi's rulings have shown such a 'high degree of favoritism or antagonism' to make a fair trial impossible for Chen." *Id.* at 19. The Trustees also note that the Travel Order was in effect a "preliminary injunction," for which the rule of decision is different from that employed when reaching the ultimate merits of the case. *See id.* at 21. It "is not the law" that "every judge that rules on a prejudgment remedy application or motion for preliminary injunction . . . must then be recused from further proceedings because that judge has already made up his or her mind." *Id.* The Trustees contend that "an objective, disinterested observer fully informed of the[] facts could not possibly entertain significant doubt that justice would be done absent the recusal of Judge Tancredi." *Id.* at 22.

Chen does not attack "the manner in which the judge came to his conclusion"—Judge Tancredi concededly "came to his decision meticulously, . . . explain[ing] precisely why the motion was being denied." *See In re Basciano*, 542 F.3d at 957. Thus, my review is limited to whether there have been "actions by the judge which might be viewed by 'an objective, disinterested observer' as evidencing bias." *Id.* I agree with the Trustees that there have not.

To support her claim of bias, Chen primarily relies on Judge Tancredi's judicial rulings, which "'almost never constitute valid basis for a bias or partiality motion' and 'can only in the

10

rarest circumstances evidence the degree of favoritism or antagonism required.'" *In re IBM*, 45 F.3d at 644 (quoting *Liteky*, 510 U.S. at 555). The instant case does not present those "rarest circumstances." *See id.* By way of comparison, one of the few cases in which the Second Circuit held that recusal was required—*In re IBM*—involved a district judge who had criticized the government's decision to dismiss a related antitrust case, resisted approving a joint stipulation of dismissal, and given newspaper interviews pertaining to the subject matter of the case. *Id.* at 642–43. Although the Second Circuit "assume[d] that the [j]udge's subjective disposition [was] one of impartiality," it held that it was "manifestly clear that a reasonable observer would question the [j]udge's impartiality . . . based on the judicial and extrajudicial actions" that the court had "previously determined to be so far in excess of appropriate judicial actions as to warrant a prior issuance of mandamus." *Id.* at 644.

In the present case, by contrast, Judge Tancredi did not engage in any "judicial and extrajudicial actions" that would lead "a reasonable observer [to] question" his impartiality. *See id.* In the Travel Order, Judge Tancredi made "reference to the record," considered "the circumstances and state of the evidence," and acted to prevent "irreparable harm to . . . [the] Chapter 7 estate" that would have "left the estate without an adequate remedy." *See* Ruling & Order, Doc. No. 176, at 7, *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn. Apr. 5, 2017). He provided Chen an opportunity to be heard and subsequently ruled in her favor by vacating the Travel Order. *See* Doc. No. 167, *id.* "A reasonable person—the proverbial average person on the street with knowledge of all the facts and circumstances alleged in the motion to recuse . . . would not question [Judge Tancredi]'s ability to sit impartially" because he issued (and later vacated) what amounted to a preliminary injunction. *In re Martin-Trigona*, 573 F. Supp. at 1243; *see In re Ad Hoc Comm. of Tort Victims*, 327 B.R. at 140 (denying petition seeking recusal of

11

bankruptcy judge based on statements made during "hearing . . . [on] motion for a preliminary injunction"). Judge Tancredi's "adverse rulings"—much less his rulings favorable to Chen—"do not constitute a basis for recusal." *In re Haas*, 292 B.R. 167, 178 (Bankr. S.D. Ohio 2003).

The crux of Chen's objection appears to be that one of Judge Tancredi's reasons for restricting her travel was that "China . . . [is] where [Chen's] former husband, the Debtor, conducts business and frequents." *See* Travel Order, Doc. No. 142, at 1, *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn. Mar. 21, 2017). That clause, she argues, shows that Judge Tancredi "already has made up [his] mind on the ultimate issue in the case," namely, "whether the divorce was a 'sham.'" Pet. Writ Mandamus, Doc. No. 1, at 23, *In re Chen*, No. 17-cv-00615 (D. Conn. Apr. 13, 2017). But that does not follow. The fact that Chen's ex-husband—the father of her children—lives in China shows Chen's ongoing relationship with that country. *See* Travel Order, Doc. No. 142, at 1, *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn. Mar. 21, 2017) (also citing Chen's "roots" and "family" in China). Moreover, as Judge Tancredi noted, Chen already had sent "substantial funds that . . . may be recoverable by the Trustee . . . to China" after the bankruptcy case was filed. *Id.* In those circumstances, withholding Chen's passport may or may not have been legally correct, but it certainly did not show "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

Chen also hints that Judge Tancredi was biased against her "based upon [her] [national] origin of China," citing for support that even though "no one has raised an issue concerning whether [Chen] is a United States citizen," Judge Tancredi "questioned . . . a non-party witness . . . regarding whether [Chen] is a citizen." Pet. Writ Mandamus, Doc. No. 1, at 16, 21. Again, though, "judicial remarks during the course of a trial" or hearing "ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. Only in the "rarest circumstances" is the

"extraordinary remedy" of mandamus appropriate as a result of a judicial ruling. *See id.*; *In re Carroll*, 292 B.R. 472, 474 (D. Conn. 2003). As an example of such circumstances, the Supreme Court cited "the statement that was alleged to have been made by the District Judge in . . . a World War I espionage case," that the "hearts" of the German-American defendants were "reeking with disloyalty." *Liteky*, 510 U.S. at 555 (quoting *Berger v. United States*, 255 U.S. 22, 28 (1921)). Conversely, Judge Tancredi's question regarding Chen's citizenship in no way shows "deep-seated . . . antagonism" toward her in the instant case. *See id.*

As Judge Tancredi's ruling noted, "[s]ection 455(a) requires a showing that would cause an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal." Ruling & Order, Doc. No. 176, at 3, *Chorches v. Chen*, No. 14-ap-05019 (Bankr. D. Conn. Apr. 5, 2017) (quoting *In re Certain Underwriter*, 294 F. 3d 297, 305 (2d Cir. 2002)). In the words of the Seventh Circuit, "[a]n objective standard is essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person." *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996). "The appearance of partiality test is one of reasonableness; it does not require recusal in response to spurious or vague charges of partiality," *In re Martin-Trigona*, 573 F. Supp. at 1243, and the risk of the appearance of bias must be "substantially out of the ordinary." *Hook*, 89 F.3d at 354. Here, Chen has not come close to meeting that "exacting standard." *See In re IBM*, 45 F.3d at 643. At most, she has set forth "proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555; *see also In re Carroll*, 292 B.R. at 474 ("Mandamus . . . is an extraordinary remedy and is not normally granted if the relief sought could be obtained through a direct appeal."). Indeed, Chen's mandamus petition has

functioned as an expedited appeal from the order denying the motion to recuse. The merits of that "appeal" have been decided by this ruling.

The bankruptcy judge, like the district judge, "has discretion 'in the first instance to determine whether to disqualify himself.'" *In re Basciano*, 542 F.3d at 956 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 (1983)). Chen has not shown that Judge Tancredi "abused [his] discretion" here. *See id.* As a result, she has not demonstrated the "clear and indisputable" right to relief necessary to invoke "the exceptional remedy of mandamus." *Id.* at 955–56. Her petition is entirely meritless, and must be denied.

**IV. Conclusion**

For the reasons stated above and on the record, I deny Chen's petition for a writ of mandamus, Doc. No. 1. The Clerk shall enter judgment and close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 18th day of April 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
